IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NANCY BUONLAMPERTI,

    Plaintiff,                      No. 2:11-cv-0747 DAD

    vs.

CAROLYN W. COLVIN,              <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        On August 13, 2008, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on August 18, 2007. (Transcript (Tr.) at 12, 65.) Plaintiff's application was denied initially and on reconsideration. (<u>Id</u>. at 69-78.) A hearing was held before an Administrative Law Judge (ALJ)

on September 25, 2009.  (Id. at 25-64.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on October 23, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 23.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.
>
> 2. The claimant has not engaged in any substantial gainful activity since August 18, 2007, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 3. The claimant has the following severe impairment: schizoaffective disorder (20 CFR 404.1520(c)).
>
> 4. The medically established schizoaffective disorder is not attended by clinical and laboratory findings that meet or equal any listed impairment of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but is able to understand, remember, and carry out simple, routine, and repetitive one to two step type work.  She is limited to work in low stress environments consisting of simple work related decisions with few, if any, work place changes.  The claimant is further limited to occasional interaction with co-workers and the general public.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on August 20, 1950 and was 57 years of age as of her alleged onset date of disability.  Currently the claimant is 59 years of age.  She is therefore considered an individual of advanced age (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR § 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

/////

>11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2007 through the date of this decision (20 CFR 404.1520(g)).

(Id. at 15-23.)

On January 26, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 17, 2011.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

**I.     Medical Opinion**[1]

Plaintiff argues that the ALJ's finding that the opinion of her treating psychiatrist, Dr. Lipman, was entitled to little weight was not supported by substantial evidence. (Pl.'s MSJ

---

[1] The court finds the organization of arguments in plaintiff's motion for summary judgment to be, disjointed and confusing. Accordingly, the court has attempted to restructure the arguments found in plaintiff's motion in the clearest possible manner.

1  (Doc. No. 16) at 13-15.²)  In this regard, on August 26, 2009, Dr. Kenneth Lipman completed a
2  Medical Opinion Re:  Ability to do Work Related Activities (Mental) form.  (Tr. at 545-46.)
3  Therein, Dr. Lipman expressed his opinion that plaintiff was seriously limited in a number of
4  areas of functioning, including the ability to remember work-like procedures, understand and
5  remember very short and simple instructions and make simple work related decisions, and was
6  also unable to meet competitive standards in a number of other areas of functioning, including
7  the ability to maintain attention for two hours, to sustain an ordinary routine without special
8  supervision, complete a normal workday and workweek without interruptions from
9  psychologically based symptoms and perform at a consistent pace without an unreasonable
10 number and length of rest periods.  (Id. at 545.)

11         That same day Dr. Lipman also completed a Mental Assessment (Short Form)
12 which indicated that plaintiff was suffering from sleep disturbances, psychomotor agitation or
13 retardation, decreased energy, difficulty concentrating or thinking, hallucinations, delusions or
14 paranoid thinking, autonomic hyperactivity, a persistent irrational fear, and recurrent and
15 intrusive recollections of a traumatic experience, which are a source of marked distress.  (Id. at
16 547-48.)  Moreover, Dr. Lipman indicated that plaintiff was moderately limited in her activities
17 of daily living, ability to maintain social functioning and ability to maintain concentration,
18 persistence and pace.  (Id. 548-49.)

19         Nonetheless, the ALJ gave "little weight" to Dr. Lipman's opinion, stating:

> I have considered the August 2009 medical source statement by Dr.
> Lipman suggesting greater limitation but find that his assessment is
> not supported by the medical evidence.  (Exhibit B-18F).  Notably,
> there is an inconsistency between Dr. Lipman's opinion and his
> progress notes, including his GAF ratings showing good functional
> capacity.  In an earlier report from August 2008 – approximately
> one year after her alleged onset – Dr. Lipman assessed, for
> example, that the claimant was stable and she had "minimal"
> symptoms (Exhibit 3F).  In follow-up visits in December 2008 and

---

² Page number citations such as this one are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

> June 2009 he again reported that she was doing well and he assigned a much higher GAF than the social worker, Robert Fahnestock, D.C.S.W., who assigned a GAF of only 38 (Exhibits B-1F, B-9F, B-17F). Mr. Fahnestock's opinion is dated a year and a half prior to the claimant's alleged onset date and there has been no subsequent psychiatric hospitalizations which might support his assessed degree of mental incapacitation. Moreover, I find that his opinion is inconsistent with the medical evidence as a whole. For these reasons, I afford such opinion and the more restrictive mental assessment of Dr. Lipman at Exhibit B-18F little weight.

(Tr. at 21.)

Dr. Lipman, however, was plaintiff's treating psychiatrist, and first began treating plaintiff in "the late 80s." (Id. at 376.) As plaintiff's treating physician, Dr. Lipman's opinion was entitled to considerable weight. In this regard, the weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

Here, the ALJ rejected treating psychiatrist Dr. Lipman's opinion because of "an inconsistency between Dr. Lipman's opinion and his progress notes," specifically referring to the doctor's earlier reports from August 2008, December 2008 and June 2009, and because his "opinion is inconsistent with the medical evidence as a whole." (Tr. at 21.)

/////

However, it is far from clear that Dr. Lipman's opinion is inconsistent with his progress notes. In this regard, in an August 7, 2008 progress note Dr. Lipman noted that plaintiff complained that while eating at a restaurant the waitress allegedly told her that plaintiff's ex-husband "was going to get her." (Id. at 382.) Dr. Lipman noted that this claim "could be deemed delusional." (Id. at 383.) In a December 10, 2008 progress note Dr. Lipman noted that plaintiff "occasionally still gets suspicious" and that after returning from a trip to South Dakota plaintiff was "paranoid." (Id. at 465-66.) Finally, Dr. Lipman documented a July 21, 2009 phone call he received from plaintiff in which she complained that she "doesn't understand verbal information while she is processing it" and "feels she has obsessive-compulsive disorder." (Id. at 515.)

Moreover, Dr. Lipman's opinion was rendered on August 26, 2009. (Id. at 546, 549.) That opinion, at least with respect to plaintiff's moderate limitations in her activities of daily living, ability to maintain social functioning and ability to maintain concentration, persistence and pace, indicates that the earliest date that those limitations applied to plaintiff was July of 2009, after Dr. Lipman's reports from August 2008, December 2008 and June 2009 referred to in the ALJ's opinion and just two months prior to the September 25, 2009 administrative hearing. (Id. at 549.) In this regard, it does not appear that there is in fact any evidence in the record that conflicts with Dr. Lipman's August 26, 2009 opinion regrading plaintiff's limitations at that time.[3] Thus, it is not clear that treating psychiatrist Dr. Lipman's opinion is inconsistent with the medical evidence as a whole.

Finally, "[t]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is

---

[3] Moreover, there is evidence in plaintiff's medical record indicating that her condition may have well deteriorated during this period of time. In this regard, plaintiff's medical record indicates that on May 4, 2009, she called crisis services complaining that she was hearing voices and that on June 22, 2009, she complained of increased crying spells and paranoia "about people coming after her." (Tr. at 520, 531.) Morever, Dr. Lipman noted in a June 24, 2009 progress note that plaintiff had chosen to discontinue taking Zyprexa and that she "had a negative history after giving up Zyprexa." (Id. at 533.)

7

represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "In cases of mental impairments, this duty is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). In this regard, if the ALJ required an explanation from treating psychiatrist Dr. Lipman regarding his August 26, 2009 opinion, the ALJ should have conducted an inquiry. See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record.") (citations omitted); see also 20 C.F.R. § 404.1512(e)-(e)(1) (2010) ("When the evidence we receive from your treating physician or psychologist . . . is inadequate for us to determine whether you are disabled . . . . We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Accordingly, the court finds that plaintiff is entitled to summary judgment in her favor with respect to her claim that the ALJ erred in finding that the opinion of her treating psychiatrist, Dr. Lipman, was not supported by substantial evidence.

**II.     Plaintiff's Testimony**

Plaintiff also argues that the ALJ improperly rejected plaintiff's own testimony regarding her subjective symptoms. (Pl.'s MSJ (Doc. No. 16) at 11-12.) In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of

> the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

Here, the ALJ's opinion acknowledged plaintiff's testimony regarding the severity of her symptoms and the resulting limitations, stating:

> At the hearing, the claimant complained of difficulty with comprehension and work requiring multiple steps. She described a preference for social isolation. In disability reports, the claimant complained of fatigue following treatment for breast cancer, paranoia affecting her ability to sleep, confusion, loss of concentration, and difficulty following instructions and completing tasks.

(Tr. at 21.) However, the ALJ rejected plaintiff's testimony, stating:

> There are medically established disorders to account for the claimant's symptoms. I find, however, that the alleged severity of symptoms is not entirely credible.

\*\*\*

> There is evidence of a good response to medications that also discredits the level of symptoms claimed. The claimant had daily activities that are inconsistent with her estimate of functional loss. As described above, the claimant goes out and travels without any signs of significant difficulty. She cares for her own personal needs and performs household chores, cooking, laundry, and shopping. She visits friends, is able to drive, and performs volunteer work and part time work that is also inconsistent with the degree of symptoms and functional loss alleged. When considering the evidence as a whole, I find that the alleged intensity, persistence, and functionally limiting effects of the subjective complaints are not entirely credible.

(Id. at 21.)

However, with respect to the ALJ's assertion that there was "evidence of a good response to medication," the ALJ's opinion fails to cite to any evidence in the record to support this conclusion and the court's review of the record has uncovered none.

Next, the ALJ states that plaintiff's "daily activities are inconsistent with her estimate of functional loss." (Id.) In this regard, the ALJ claims that plaintiff "goes out and travels without any signs of significant difficulty." (Id.) Plaintiff, however, testified at the administrative hearing that she has to take extra doses of medication when she has to "go to see Dr. Lippman [sic], or to go to appointments," or to visit her attorney or go to the supermarket. (Id. at 43.) Moreover, as noted above, after plaintiff took a trip to South Dakota her medical records indicate that when she returned she was "paranoid." (Id. at 465.)

The ALJ also rejected plaintiff's testimony because he found that she "cares for her own personal needs and performs household chores, cooking, laundry, and shopping." (Id. at 21.) It is well established, however, that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for

10

1  exercise, does not in any way detract from her credibility as to her overall disability."). In
2  general, the Commissioner does not consider "activities like taking care of yourself, household
3  tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial
4  gainful activities.  20 C.F.R. § 404.1572(c).  See also 20 C.F.R. § 404.1545(e).

5         Moreover, it is not apparent that any of plaintiff's difficulties with comprehension
6  and work requiring multiple steps, preference for social isolation, paranoia affecting her ability to
7  sleep, confusion, loss of concentration, and difficulty following instructions and completing
8  tasks, would negatively impact her ability to care for herself, perform household chores, cook or
9  do laundry.  In this regard, plaintiff testified, "I'm alone, so I can do that."  (Tr. at 47.)  With
10 respect to going shopping, however, plaintiff did describe that task in her testimony as her
11 "biggest anxiety-driven thing" due to the "crowd" and her "fear."  (Id. at 45.)  Plaintiff testified
12 that, even though she goes to the market "a couple of days a week" because of her fear and
13 difficulty concentrating it takes her "two, two and a half hours to go through the market."  (Id. at
14 45-46.)

15        Finally, the ALJ rejected plaintiff's testimony because she "visits friends, is able
16 to drive, and performs volunteer work and part time work . . . ."  (Id. at 21.)  The court, however,
17 finds it unclear how plaintiff's ability to visit friends undermines her credibility, and the ALJ's
18 opinion provides no further explanation for his conclusion in that regard.  Moreover, as noted
19 above, the mere fact that plaintiff can drive does not detract from her credibility.  See Vertigan,
20 260 F.3d at 1050.  With respect to her volunteer work, plaintiff testified that she volunteers one
21 day a week at her church and that "at church and at the police department . . . . are the only places
22 [she] felt safe."  (Tr. at 37.)  Finally, plaintiff's part-time work consisted of working two days a
23 week at a group home for developmentally disabled adults and lasted only for the eight-month
24 /////
25 /////
26 /////

period from November 2008 to July of 2009.[4]  (Id. at 32-33.)  In short, it is unclear how any of these factors allegedly relied upon by the ALJ in rejecting plaintiff's testimony undermined her credibility.

For the reasons stated above, the court finds that the ALJ's opinion does not offer specific, clear and convincing reasons for rejecting plaintiff's testimony.  Accordingly, the court finds that plaintiff is also entitled to summary judgment in her favor with respect to this claim.

### III.    Lay Witness Testimony

Plaintiff also argues that the ALJ erred by failing to evaluate the credibility of the third party statement offered by plaintiff's friend, Donna O'Nele.  (Pl.'s MSJ (Doc. No. 16) at 10-11.)

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Persons who see the claimant on a daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).

Lay witness testimony "cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give specific reasons germane to each particular witness in doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  Moreover, the mere fact that medical records do not corroborate the testimony does not provide a proper basis for rejecting such testimony.  Smolen, 80 F.3d at 1289.

/////

---

[4] Morever, the ALJ found that this part time work did not rise to the level of substantial gainful activity.  (Tr. at 15.)

Here, the ALJ's opinion acknowledged the lay witness statement, stating:

> [Plaintiff's] complaints were corroborated by Donna O'Nele, a friend, who also indicated that she had observed erratic behavior by the claimant, agitation with stress and change in routine, paranoia, and unreliability (Exhibit B-3E).

(Tr. at 21.) The ALJ's opinion, however, makes no further mention of Ms. O'Nele's statement. The ALJ failed to provide any explanation as to why he rejected Ms. O'Nele statement and that failure constitutes legal error as well. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("ALJ erred in failing to explain her reasons for disregarding the lay witness testimony"); Nguyen, 100 F.3d at 1467 (lay witness testimony "cannot be disregarded without comment").

Defendant argues that the ALJ's failure to address Ms. O'Nele's statement is harmless because that statement was "very similar" to plaintiff's own testimony and "[t]hus, for the same reason that the ALJ discredited Plaintiff, these reasons hold true to Mrs. Nele." (Def.'s MSJ (Doc. No. 19) at 14.) The court, however, is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). Rather, the Commissioner's decision "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." See Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996). See also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion . . . .").

It is true that the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis, and may point to the germane reasons for rejecting testimony by one witness when rejecting similar testimony by a different witness. See Molina, 674 F.3d at 1114; see also Valentine, 574 F.3d at 694 (ALJ did not err by rejecting evidence based on the same reasons the ALJ discounted plaintiff's allegations). Here, however, the court has already found that the ALJ's reasons for rejecting plaintiff's own testimony were not legally

sufficient. Moreover, the ALJ did not point to the same reasons he relied upon in rejecting plaintiff's testimony as the reasons he relied upon in rejecting Ms. O'Nele's statement. Instead, the ALJ's opinion merely notes Ms. O'Nele's statement without any further comment.

Accordingly, the court finds that plaintiff is also entitled to summary judgment in her favor with respect to this claim.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, when the opinion evidence of plaintiff's treating psychiatrist is given the proper weight, the evidence of record demonstrates that plaintiff was disabled when treating psychiatrist Dr. Lipman rendered his opinion on August 26, 2009. In this regard, the Vocational Expert who testified at the September 25, 2009 hearing testified that the limitations indicated by Dr. Lipman's opinion would preclude plaintiff from working. (Tr. at 62-63.) Thus, the ALJ incorrectly found that plaintiff had not been under a disability at any time from August 18, 2007 through October 23, 2009, the date of the ALJ's decision.

However, while it is clear that plaintiff was under a disability as of August 26, 2009, it is not clear from the administrative record before the court if the date of onset of disability is August 26, 2009, or sometime prior thereto.[5] See Luna v. Astrue, 623 F.3d 1032,

---

[5] As noted above, plaintiff's alleged onset date of disability is August 18, 2007.

14

1035 (9th Cir. 2010) (affirming remand to determine onset date where ALJ did not address the issue and evidence in the record did not establish onset date); Regennitter, 166 F.3d at 1300 (finding claimant disabled but remanding for determination of onset date); Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998) (Where, after reviewing the record, the court found it unclear when the claimant's disabilities became disabling the case was remanded with instruction to determine when the claimant became disabled).

Accordingly, the court will remand the matter for further administrative proceedings consistent with this order and solely for the limited purpose of determining the correct date of onset of plaintiff's disability.[6]  See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision that the ALJ improperly rejected an examining physician's opinion).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 16) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 19) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: March 5, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.soc sec/buonlamperti0747.order

---

[6] Although finding it unnecessary to address plaintiff's remaining claims, the court has nonetheless examined those claims and determined that remanding this matter for the limited purpose of determining the correct date of onset of plaintiff's disability, as oppose to simply reversing and awarding benefits based upon a date of onset selected by the court based upon an incomplete record, is appropriate.